Andrew Kazakes, SBN 277912
akazakes@lafla.org
Yolanda Arias, SBN 130025
yarias@lafla.org
Robyn Smith, SBN 165446
rsmith@lafla.org
Josephine Lee, SBN 308439
jslee@lafla.org
LEGAL AID FOUNDATION OF LOS ANGELES
5228 Whittier Boulevard
Los Angeles, CA 90022
Telephone:   (213) 640-3944
Facsimile:    (213) 640-3911

Attorneys for Plaintiff
SONIA RAMOS ESCOBEDO

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIA RAMOS ESCOBEDO, | Case No.: 2:17-cv-7586 |
| *Plaintiff*, | **COMPLAINT FOR REVIEW OF FINAL AGENCY ACTION AND FOR DECLARATORY RELIEF** |
| v. | |
| BETSY DEVOS, in her official capacity as Secretary of the United States Department of Education, | |
| *Defendant*. | |

## INTRODUCTION

1.     Plaintiff Sonia Ramos Escobedo ("Plaintiff") brings this action, pursuant to 5 U.S.C. § 702, for judicial review of the Secretary of the U.S.

1

Department of Education's (the "Secretary" or the "Department") denial of her application for discharge of her federal student loans.  She also seeks a declaration, pursuant to 28 U.S.C. §§ 2201-2202, that the Department's informal evidentiary policy for the evaluation of false certification discharge applications based on ability-to-benefit fraud is arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations in violation of the Administrative Procedure Act, 5 U.S.C. § 706.

2.      In 1988, after Plaintiff had dropped out of high school and was only 17 years of age, the Career Institute fraudulently obtained over $5,000 of federal student loans in Plaintiff's name even though she did not enroll or attend a single day of class.  In doing so, the Career Institute falsely certified her eligibility for federal financial aid because it failed to test her "ability to benefit" from the Career Institute's program, as required by federal law. This federal law was enacted to ensure that vulnerable students like Plaintiff, who lacked a high school diploma or GED, took on federal student debt only if they had the basic skills necessary to succeed in their postsecondary education programs.

3.      In 1991, after a 2-year investigation, a U.S. Senate Subcommittee determined that, between 1986 and 1991, the Department's "gross mismanagement, ineptitude, and/or neglect in carrying out its oversight" responsibilities led to a "national epidemic" of for-profit school fraud, including the widespread "falsification of information used to satisfy . . . ability-to-benefit requirements."  It was based on these findings that Congress enacted 20 U.S.C. § 1087(c), which requires the Secretary to discharge student loans for borrowers whose schools falsely certify that they are eligible for federal financial aid.

///

4.     In 2015, as soon as Plaintiff discovered that she might be eligible for a discharge under this law, she submitted an application for a false certification discharge to the Department. Despite the fact that the Department has no evidence controverting Plaintiff's sworn application and the Senate Subcommittee's findings, it applied its informal "corroborating evidence" policy and inferred that Plaintiff's statements were false and the Career Institute had not engaged in ability-to-benefit fraud because it could not find any oversight agency determinations that the school had violated federal regulations in or around 1988.

5.     The Department now claims Plaintiff owes $24,410 on her defaulted federal loan and has seized thousands of dollars in income tax refunds which Plaintiff counts on to support her two grandchildren, for whom she is the sole caretaker.  Plaintiff cannot get out of default because she has already used the one chance federal law allows to rehabilitate and consolidate out of default. As a result, Plaintiff faces a lifetime of tax refund offsets, wage garnishments and Social Security offsets unless the Department discharges her loans.

## JURISDICTION AND VENUE

6.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act, 5 U.S.C. § 702, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events giving rise to the claim occurred in this district and Plaintiff resides in this district.

## PARTIES

8.     Plaintiff SONIA RAMOS ESCOBEDO (hereinafter "Plaintiff") resides, and at all relevant times has resided, in Los Angeles County, California.
///

Complaint for Judicial Review and Declaratory Relief Against Betsy DeVos

9.      Defendant BETSY DEVOS is the Secretary (hereinafter, "Secretary" or "Defendant") of the United States Department of Education (hereinafter, collectively, "the Department"). The Secretary oversees all operations of the Department and the administration of the federal student loan programs. She is sued in her official capacity.

## BACKGROUND

### *Secretary's Authority over the Federal Student Loan Programs*

10.      Title IV of the Higher Education Act of 1965 ("HEA"), 20 U.S.C. §§ 1070-1099d, charges the Secretary with the responsibility of administering and overseeing the federal student loan programs, including the Federal Family Education Loan ("FFEL") and Direct Loan programs.

11.      Under the FFEL program, private lenders issued student loans to borrowers who met the eligibility criteria of the HEA. 20 U.S.C. §§ 1077, 1091(b). These loans were insured by guaranty agencies and in turn reinsured by the Department. 20 U.S.C. § 1078(b)-(c).

12.      Under the Direct Loan program, the federal government issues student loans directly to borrowers who meet the eligibility criteria of the HEA, including consolidation loans.  20 U.S.C. §§ 1087a, 1087e.

13.      Direct Loans and FFEL program loans have the same terms, conditions, and benefits.  20 U.S.C. § 1087e(a)(1).

14.      There is no statute of limitations on the collection of Direct Loans or FFEL program loans. 20 U.S.C. § 1091a(a)(2).

15.      The Secretary has promulgated regulations that dictate certain procedures that guaranty agencies and the Department must follow in administering the FFEL and Direct Loan programs. 34 C.F.R. Parts 682 (FFEL program) and 685 (Direct Loan program).

4

### *False Certification Student Loan Discharges*

16.     In 1986, Congress amended the HEA to allow a student who did not have a high school diploma or General Education Diploma ("GED") to receive financial aid if their school determined that he or she demonstrated an "ability to benefit" ("ATB") from the program the student sought to attend. *See* Pub. L. No. 99-498, sec. 407(a), § 484(d), 100 Stat. 1268, 1481 (1986) (codified at 20 U.S.C. § 1091(d)).

17.     In 1988, the relevant year in this case, a school could demonstrate that a student met the ATB exception by certifying that it administered an accreditor-approved "ability-to-benefit" test to the student and that the student had received a passing score before it disbursed the federal financial aid. *See* 20 U.S.C. §§ 1091(d), (e) (1986); 34 C.F.R. § 682.402(e)(13).

18.     Between 1989 and 1991, the U.S. Senate Permanent Subcommittee on Investigations of the Committee on Governmental Affairs conducted an investigation into the causes of skyrocketing student loan defaults.  S. Rep. No. 102-58, 1st Sess. 37 (1991) (the "Nunn Report").

19.     The study revealed a "national epidemic" of fraud by for-profit trade schools, including a "widespread" practice of fraudulently certifying students' ability to benefit from the schools' programs. *Id*. at 12.

20.     The Subcommittee determined that these widespread abuses were allowed to proliferate and continue due to a "complete breakdown in effective regulation and oversight." *Id*. at 11.  The report stated that through "gross mismanagement, ineptitude, and/or neglect in carrying out its oversight and regulatory functions, the Department had all but abdicated its responsibility to the students it is supposed to service . . . ." *Id*. at 37.

///

21.     The Subcommittee also determined that the other entities responsible for proprietary school oversight—state licensing agencies, guaranty agencies and accrediting agencies—were equally lax in monitoring schools' compliance with federal regulations because they "have neither the motivation nor the capabilities to effectively police the [financial aid] program." *Id*. at 32.

22.     In response to this widespread failure of the federal oversight system to prevent ATB fraud, Congress amended the HEA in 1992 to provide that "the Secretary <u>shall</u> discharge [a] borrower's liability on [his or her] loan" when the borrower's "eligibility to borrow . . . was falsely certified by an eligible institution." Higher Education Amendments of 1992, Pub. L. No. 102-325, sec. 428, § 437(c), 106 Stat. 448, 551 (1992) (codified as amended at 20 U.S.C. § 1087(c)) (emph. added).

23.     Federal regulations require a student seeking discharge on the basis of ATB false certification to submit a written request to the loan holder (the guaranty agency or Department), including a sworn factual statement. 34 C.F.R. §§ 682.402(e)(3)(ii) (FFEL program loans) and 685.215(c) (Direct Loans).

24.     The guaranty agencies and the Department must review discharge requests and other evidence submitted by the borrower "in light of the information available from the records of" the guaranty agency or the Secretary, whichever is applicable, "and from other sources, including other guaranty agencies, state authorities, and cognizant accrediting associations." 34 C.F.R. §§ 682.402(e)(6)(iv) (FFEL program loans) and 685.215(d)(3) (Direct Loans).

25.     The guaranty agencies and Department may also request that the borrower "provide . . . other documentation <u>reasonably available</u> to [him or her] . . . that demonstrates" the borrower's eligibility for loan discharge. 34 C.F.R. §§ 682.402(e)(3)(vi) (FFEL program loans) and 685.215(c)(6)(i) (Direct Loans)

6

(emph. added).

26.     If a guaranty agency or the Department determines that a borrower satisfies the requirements for an ATB false certification discharge, it is required to (a) discharge the borrower's obligation to pay existing or past loans falsely certified by the school, as well as any accrued charges and collection costs, (b) refund payments made by the borrower on the loans, and (c) report the discharge to all consumer reporting agencies so as to delete all adverse credit history regarding the loans.  20 U.S.C. § 1087(c)(1); 34 C.F.R. §§ 682.402(e)(2) (FFEL program loans) and 685.215(b) (Direct Loans).

27.     The guaranty agency or Department must do the same for the portion of any Direct Consolidation Loan or FFEL program consolidation loan equal to the amount of the loans falsely certified by the school and included in the consolidation loan.  34 C.F.R. § 685.212(e) (Direct Loans); U.S. Dep't of Educ., Dear Colleague Letter 94-G-256 at 6 (Sept. 1994).

28.     There is no time limit on a borrower's eligibility for discharge.  A borrower may submit an application at any time, including after a loan has been paid off. 34 C.F.R. §§ 682.402(e)(1)(i), (e)(6)(v) (FFEL program loans) and 685.215(b)(1) (Direct Loans).

### *The Corroborating Evidence Standard*

29.     Despite the false certification abuses and oversight failures documented in the Nunn Report, the Department unilaterally imposed a "corroborating evidence" policy that requires the Department or guaranty agency to disregard a borrower's sworn statements, even if they are uncontroverted, unless the guaranty agency or Department obtains "finding[s] [of ATB fraud] by an entity or organization that had oversight responsibility over the school's [Student Financial Aid] administration or educational programs." U.S. Dep't of Educ., Dear

Colleague Letter, GEN 95-42 at 4 (Sept. 1, 1995).

30.     Under the Department's corroborating evidence policy, the "absence" of such evidence "raises an inference that no improper [ATB] practices were reported because none were taking place." *Id*.   In this case, the burden shifts to the borrower to provide "persuasive evidence that would corroborate his or her allegation of improper ATB determination." *Id*.

31.     In addition, in the absence of any ATB oversight findings, the Department allows a discharge to be granted based only on the following additional evidence:

> a.     Statements of school employees or other students;
>
> b.      "[A] high incidence" of other discharge applications and "no evidence of collusion" among the borrowers;
>
> c.     Withdrawal rates exceeding 33% at the relevant time; or
>
> d.     Annual loan default rates which are higher than a specified rate for the time period when the borrower entered repayment. For borrowers who entered repayment during or before federal fiscal year 1989, the annual loan default rate must exceed 60%.

*Id*; U.S. Dep't of Educ., Dear Colleague Letter, DCL ID FP-07-09 at 2, 3 (Sept. 24, 2007).

32.     Borrowers do not typically have access to findings of accrediting agencies, state agencies, and the federal government, statements by prior employees, or statements of other students.  While borrowers may submit FOIA requests to obtain such evidence to the extent it is held by the Department, the Department does not always have such evidence, in part because it destroys old records of school program reviews, audits, and investigations.

///

8

33.     The Department also claims that it does not have school withdrawal rates and cannot provide copies of discharge applications and evidence possessed by guaranty agencies. The Department does not track the numbers and results of false certification discharge applications by school and for all guaranty agencies, and, to the extent it does, the Department does not make this information available to the public.

34.     In addition, although borrowers may submit false certification discharge applications at any time, the Department does not require schools, ATB testing agencies, guaranty agencies, state governments, or accrediting agencies to maintain student, school-related investigation, or false certification discharge records indefinitely.  The Department has not ensured that student testing and school records are stored and available to students indefinitely, including after a school closes.  Nor has it required that ATB testing agencies provide testing records to students upon request and without charge.  As a result, many borrowers are unable to obtain evidence of ATB abuse findings by non-Department entities or evidence supporting their individual statements.

### FACTUAL ALLEGATIONS

35.     Plaintiff Sonia Ramos Escobedo is currently 46 years old and resides in Hacienda Heights, County of Los Angeles.

36.     In August of 1988, Plaintiff, then 17 years of age, walked into the Long Beach campus of the Career Institute, Inc. (hereinafter, "the Career Institute"), a private for-profit institution of higher education.

37.     On that day, she met with a Career Institute recruitment officer to find out more about the school's computer learning program.

38.     Plaintiff had not earned a high school diploma or GED.  In addition, the Career Institute knew that she was a minor, as the recruitment officer told

plaintiff that her mother would be required to co-sign any loan documents for that reason.

39.    The Career Institute, however, never asked plaintiff whether she had a high school diploma or GED, nor did it have her take any type of test prior to enrollment to certify her ability to benefit from the educational program being offered.

40.    Plaintiff decided not to enroll at the Career Institute.  She does not recall signing any loan documents, enrollment agreement, or any other documents.

41.    Plaintiff did not attend a single class and therefore never completed any program of remedial or developmental education at the Career Institute. She also never earned a GED.

42.    Although Plaintiff never attended any classes nor recalls signing any loan documents, the Career Institute obtained a total of $5,312.00 in FFEL loan program loans in her name.

43.    By failing to administer an ATB test to plaintiff, the Career Institute falsely certified her eligibility for these federal student loans.

44.    The Career Institute was only in existence for about four years. It was opened on or about June 3, 1987 and closed on or about September 27, 1991.

45.    Because Plaintiff did not know about the existence of her FFEL program loans, Plaintiff defaulted on those loans in or around 1989 and 1991.  Her FFEL program loans were consolidated out of default in or about October 1999.

46.    Plaintiff could not afford her monthly payments on her Direct Consolidation Loan.  As a result, she defaulted on this loan in or around 2010. Plaintiff then rehabilitated it out of default in 2011.

47.    Plaintiff subsequently re-defaulted on the Direct Consolidation Loan on or about September 27, 2013.  According to Department records, Plaintiff owes

Complaint for Judicial Review and Declaratory Relief Against Betsy DeVos

approximately $24,410 on this Direct Consolidation Loan.

48.     Plaintiff submitted a false certification discharge application on or about March 19, 2015. In her application, she attested to facts under penalty of perjury that established her eligibility for a discharge under 34 C.F.R. § 685.215.

49.     The Department issued a denial letter to Plaintiff on or about April 16, 2015. The sole basis for the denial was that the Defendant did not possess any findings from a public or private oversight agency indicating any federal regulatory violations by the Career Institute. The Department did not provide any reason for its disregard of her sworn statements, nor did it request that Plaintiff provide any additional evidence.

50.     On or about September 18, 2015, the Legal Aid Foundation of Los Angeles ("LAFLA") submitted a Freedom of Information Act (FOIA) request to Defendant, pursuant to 5 U.S.C. § 552, on Plaintiff's behalf.  LAFLA requested records pertaining to the Career Institute, including records regarding ATB violations, loan default rates, withdrawal rates, and ATB applications submitted by other borrowers. On the same day, LAFLA also submitted a FOIA request for records pertaining to investigations and audits of the Career Institute to the Inspector General of the Department.

51.     In response, on October 20, 2015, the Inspector General provided a partially redacted single page printout and a letter stating that all other documents pertaining to the Career Institute in its possession had been destroyed.

52.     The single page provided by the Inspector General indicated that an investigative case had in fact been opened regarding the Career Institute on April 22, 1991. This document indicates that the Career Institute was investigated for embezzlement of public money, fraud and bribery by recipients of federal funds, fraud and false statements, and student financial aid fraud.  It further indicates that

although the case was submitted for prosecution, it was later declined after the school closed.

53.     Subsequently, in a letter dated May 23, 2016, Defendant provided four pages of records pertaining to student loan default rates for the Career Institute. According to these records, 45.7% of Career Institute students who entered repayment in 1989 defaulted on their federal loans. The Department claimed that it does not have any other responsive documents, including withdrawal rates for the Career Institute.

54.     On or about June 27, 2016, through counsel, Plaintiff submitted a second application for false certification student loan discharge.

55.     On October 20, 2016, Defendant upheld its initial denial of Plaintiff's false certification discharge application. It reiterated that the primary basis for the denial was the lack of "corroborating evidence of ATB violations at the school during Plaintiff's time of enrollment, such as program deficiencies, which would have become known during reviews and audits of the school."

56.     Defendant offered neither evidence nor analysis contradicting or disputing the statements provided under oath by Plaintiff in support of her discharge application.

57.     Plaintiff currently remains in default on her Direct Consolidation Loan.  Federal law bars her from getting out of default, except through a lump sum payment of her entire loan balance, because she has previously rehabilitated and consolidated defaulted loans.

58.     Plaintiff's wages could be garnished and future tax refunds could be offset, which would cause Plaintiff and her two grandchildren financial hardship. Plaintiff received a Debt Statement and Notice of Proposed Treasury Offset, dated August 17, 2017, which states the Department's intent to do both.  In response, on

October 13, 2017, Plaintiff submitted a Request for Review.

59.     Plaintiff has exhausted all of the administrative remedies available to her and has no other remedy at law to obtain Defendant's compliance with the HEA and the Department's student loan discharge regulations, other than through the relief sought in this complaint.

## FIRST CAUSE OF ACTION

### (Pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706)

60.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

61.     Plaintiff's application for false certification student loan discharge, along with the evidence submitted with that application, satisfied the eligibility standards set forth in 20 U.S.C. § 1087(c) and 34 C.F.R. § 685.215 for discharge of her outstanding federal student loan.

62.     The denial of Plaintiff's application for false certification student loan discharge constitutes a final agency action, as defined by 5 U.S.C. § 704, and is therefore reviewable under the Administrative Procedure Act.

63.     Defendant's denial of Plaintiff's false certification discharge application was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

64.     Plaintiff asks this court to declare that Defendant's denial of her application for false certification discharge was unlawful, arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. §

13

706(2)(A).

65.     Plaintiff further asks this court to reverse Defendant's denial of her application for false certification discharge and compel Defendant to grant her application, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 702 and 706(1) and (2)(A).

## SECOND CAUSE OF ACTION

### (Pursuant to Administrative Procedure Act, 5 U.S.C. §§ 701-706)

66.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

67.     Defendant's reliance on its informal "corroborating evidence" policy, stated in the 1995 and 2007 Dear Colleague letters, in denying Plaintiff's application for false certification discharge was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071, *et seq.* and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

68.     Defendant asks this court to hold unlawful and declare that Defendant's reliance on its informal "corroborating evidence" standard stated in the 1995 and 2007 Dear Colleague letters, including the following, in denying Plaintiff's application for false certification discharge was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

a.     Defendant's policy that the absence of oversight agency findings of improper ATB practices at a school "raises an inference that no improper ATB practices were reported because none were taking place" at

14

the school;

b.    Defendant's policy that this inference may only be overcome with evidence of corroborating statements of employees or other students, a high incidence of ATB false certification discharge applications from other borrowers who attended the same school as long as there is no evidence of collusion among them, the school's withdrawal rates exceeding 33% at the relevant time, or the annual loan default rate for the school exceeding a specified percentage when the borrower entered repayment, which is 60% for borrowers who entered repayment during or before federal fiscal year 1989; and

c.    Defendant's policy of disregarding uncontroverted sworn statements of borrowers which establish their eligibility for false certification discharges despite the complete absence of evidence to question borrower credibility.

### THIRD CAUSE OF ACTION

### (Pursuant to the Declaratory Judgment Act, 28 U.S. C. §§ 2201-2202)

69.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

70.    Plaintiff seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that the Department's denial of ability-to-benefit false certification discharge applications, including Plaintiff's application, based on its "corroborating evidence" policy stated in the 1995 and 2007 Dear Colleague letters, including the following, was and is arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

a.      Defendant's policy that the absence of oversight agency findings of improper ATB practices at a school "raises an inference that no improper ATB practices were reported because none were taking place" at the school;

b.      Defendant's policy that this inference may only be overcome with evidence of corroborating statements of employees or other students, a high incidence of ATB false certification discharge applications from other borrowers who attended the same school as long as there is no evidence of collusion among them, the school's withdrawal rates exceeding 33% at the relevant time, or the annual loan default rate for the school exceeding a specified percentage when the borrower entered repayment; and

c.      Defendant's policy of disregarding uncontroverted sworn statements of borrowers which establish their eligibility for false certification discharges despite the complete absence of evidence to question borrower credibility.

71.     For the reasons set forth in Paragraph 70, Plaintiff also seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201-2202, that the Department is obligated to cease evaluating and/or denying ability-to-benefit false certification discharge applications based on its informal "corroborating evidence" policy as stated in the 1995 and 2007 Dear Colleague letters.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment and order for relief as follows:

1.      Declaring that Defendant's denial of Plaintiff's false certification discharge application was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§

16

1071-1099d, and its implementing regulations, in violation of 5 U.S.C. § 706(2);

2.     Reversing the Department's final decision denying Plaintiff's false certification discharge application pursuant to 5 U.S.C. § 706(2);

3.     Compelling the Secretary, pursuant to 5 U.S.C. § 706(1), to:

a.     Cease collection efforts on Plaintiff's Direct Consolidation Loan;

b.     Discharge the liability on Plaintiff's Direct Consolidation Loan; and

c.     Grant Plaintiff all relief authorized by 20 U.S.C. § 1087(c)(1) and 34 C.F.R. § 685.215;

4.     Holding unlawful and declaring the Defendant's reliance on its informal "corroborating evidence" standard stated in the 1995 and 2007 Dear Colleague letters, including the following, in denying Plaintiff's application for false certification discharge was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

a.     Defendant's policy that the absence of oversight agency findings of improper ATB practices at a school "raises an inference that no improper ATB practices were reported because none were taking place" at the school;

b.     Defendant's policy that this inference may only be overcome with evidence of corroborating statements of employees or other students, a high incidence of ATB false certification discharge applications from other borrowers who attended the same school as long as there is no evidence of collusion among them, the school's withdrawal rates exceeding 33% at the

17

relevant time, or the annual loan default rate for the school exceeding a specified percentage when the borrower entered repayment, which is 60% for borrowers who entered repayment during or before federal fiscal year 1990; and

      c.    Defendant's policy of disregarding uncontroverted sworn statements of borrowers which establish their eligibility for false certification discharges despite the complete absence of evidence to question borrower credibility;

5.    Declaring the Department's denial of ability-to-benefit false certification discharge applications based on its "corroborating evidence" standard stated in the 1995 and 2007 Dear Colleague letters, including the following, is and was arbitrary, capricious, an abuse of discretion, contrary to law, and otherwise not in accordance with the Higher Education Act, 20 U.S.C. §§ 1071-1099d, and its implementing regulations, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A):

      a.    Defendant's standard that the absence of oversight agency findings of improper ATB practices at a school "raises an inference that no improper ATB practices were reported because none were taking place" at the school;

      b.    Defendant's standard that this inference may only be overcome with evidence of corroborating statements of employees or other students, a high incidence of ATB false certification discharge applications from other borrowers who attended the same school as long as there is no evidence of collusion among them, the school's withdrawal rates exceeding 33% at the relevant time, or the annual loan default rate for the school exceeding a specified percentage when the borrower entered repayment; and

c.      Defendant's policy of disregarding uncontroverted sworn statements of borrowers which establish their eligibility for false certification discharges despite the complete absence of evidence to question borrower credibility;

6.      Declaring that the Department is obligated to cease evaluating and/or denying ability-to-benefit false certification discharge applications based on its informal "corroborating evidence" policy as stated in the 1995 and 2007 Dear Colleague letters;

7.      Ordering the Secretary to pay the cost of this action, together with reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A), as determined by the Court; and

8.      Granting such other and further relief as the Court may deem just and proper.


DATED: October 17, 2017          Respectfully submitted,


                                 /s/ Andrew Kazakes_____
                                 Andrew Kazakes
                                 LEGAL AID FOUNDATION OF LOS ANGELES
                                 5228 Whittier Boulevard
                                 Los Angeles, CA 90022
                                 Telephone:   (213) 640-3944
                                 Facsimile:   (213) 640-3911

Complaint for Judicial Review and Declaratory Relief Against Betsy DeVos